

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0522-21, 0523-21, 0524-21, 0525-21

## EX PARTE ROBBIE GAIL CHARETTE, Appellant

On State's Motion for Rehearing After Opinion on Appellant's Petition for Discretionary Review from the Fourteenth Court of Appeals
Washington County

**SCHENCK, P.J., delivered the opinion in which YEARY, KEEL, FINLEY, and PARKER, JJ., joined. RICHARDSON, J., filed a concurring opinion in which NEWELL, J., joined. MCCLURE, J., concurred. WALKER, J., dissented.**

## O P I N I O N

This matter is before us on rehearing. In our original opinion, the Court agreed that Appellant's pretrial writ of habeas corpus was properly before us as her challenge presented jurisdictional and constitutional separation of powers concerns centered on the question of whether the prosecution could proceed. We reaffirm that

decision. On the merits, we answered that any criminal prosecution brought without either an authorizing referral from Texas Ethics Commission (hereinafter, the "Commission" or the "TEC") or following complete exhaustion of its civil process would be barred as an interference with that body's exclusive jurisdiction. On reconsideration, we find no such categorical bar expressed in the Constitution or the statutes implemented pursuant to it. Neither do we find any basis in the record of this case to suggest this prosecution would impermissibly impinge upon the operations of the TEC.

Accordingly, we withdraw our prior opinion reversing the court of appeals and affirm its judgment.

## BACKGROUND

Appellant ran for the office of Judge of the Washington County Court at Law as a Republican candidate in 2018. After receiving allegations of misconduct during her primary campaign, a Washington County grand jury indicted Appellant for (1) knowing misrepresentation of the true source of campaign communications, (2) falsely representing in campaign communications, with knowledge of the falsity, that she held a public office she in fact did not, (3) failing to timely file her personal financial statement, and (4) failing to maintain proper records of political expenditures. Appellant filed a pretrial writ of habeas corpus in the district court, urging the indictment be quashed as void because the exclusive authority to

investigate and initiate prosecution was, by her argument, vested in the Texas Ethics Commission.[1]

The trial court disagreed and denied habeas relief. The Fourteenth Court of Appeals affirmed, finding that the district court properly maintained jurisdiction over misdemeanors involving "official misconduct," including alleged misconduct of political candidates.

## ANALYSIS

Our analysis begins with the question of whether Appellant's pretrial writ application is cognizable. In our prior opinion on this matter, we reiterated the pretrial writ is meant to protect the individual's liberty interests in avoiding trial and as a constitutional safeguard against overreach by the state.[2] Putting aside the merits

---

[1] Specifically, Appellant contended that provisions in Article III, Section 24a of the Texas Constitution and Texas Government Code Chapter 571 cabined enforcement of the violations at issue to a sworn complaint to the TEC, *see* TEX. GOV'T CODE ANN. § 571.122, followed by an administrative review process. *Id.* §§ 571.124–571.129. Appellant further urged the Government Code provision indicating that the Commission may "refer matters to the appropriate prosecuting attorney for criminal prosecution" only upon the vote of six of eight members of the TEC indicated exclusive authority and means to initiate the charge. *Id.* § 571.171(a). Thus, because Appellant did not receive any of these procedural protections before being criminally charged in these cases, she maintained that the prosecution was unauthorized or, alternatively, that her rights to due process and due course of law had been irreparably violated.

[2] Appellant's claims give rise to a cognizable basis for pretrial habeas relief because they implicate both the trial court's jurisdiction over these offenses and Appellant's right to avoid trial in the absence of prior TEC proceedings. *Ex parte Charette*, No. PD-0522-21, 2024 WL 4138710, at *4 (Tex. Crim. App. Sept. 11, 2024), *reh'g granted* (Jan. 15, 2025).

of Appellant's arguments as we should at this stage,[3] we reaffirm that holding here.

## I.     APPELLANT'S WRIT IS COGNIZABLE

We have recognized the right to habeas review where the prosecution itself would be barred and the applicant's substantive rights and judicial efficiency collectively counsel in favor of immediate review. *Ex parte Weise*, 55 S.W.3d 617, 620 (Tex. Crim. App. 2001). This would include facial attacks to the constitutionality of the statute creating the offense and claims that would otherwise "deprive the trial court of the power to proceed." *Ex parte Lowry*, 693 S.W.3d 388, 404 (Tex. Crim. App. 2024). While facial constitutional attacks are easily recognized, other challenges going to the power of the trial court to proceed are more problematic.

In some cases, a pretrial habeas writ will attack the trial court's right to proceed under any circumstance. This would be true where the trial court lacked the necessary jurisdiction to proceed. *Ex parte Reedy*, 282 S.W.3d 492, 502 (Tex. Crim. App. 2009); *Ex parte Banks*, 769 S.W.2d 539, 540 (Tex. Crim. App. 1989). This

---

[3] Even when jurisdictional questions are entangled with the merits, we must first assure ourselves of the power of the court to act, particularly when facing a separation of powers challenge that implicates the exercise of jurisdiction that may, in itself, interfere with a constitutional assignment of power. In our system as in the federal system, "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power" and is "inflexible and without exception." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1988) (quoting *Mansfield,* C. & *L. M. R. Co.* v. *Swan,* 111 U. S. 379, 382 (1884)); *accord Davis v. State,* 956 S.W.2d 555, 559 (Tex. Crim. App. 1991).

would also be true where the prosecution is aimed at attacking authority completely assigned to another branch or department of government.

This case is somewhat more complex in that it turns on the circumstances of the prosecution itself. Appellant contends that the TEC, an agency created by constitutional amendment and assigned to the legislative department, is vested with exclusive (or at least primary) jurisdiction to investigate the election law violations at issue here. Thus, while Appellant acknowledges the authority of district and county attorneys to initiate a prosecution such as this, she contends that proceeding in advance of exhaustion of its process (or absent an authorizing referral) interferes with the TEC's operations and, hence, the operations of the legislative department. Appellant cites no evidence, however, that the charges filed against her in this proceeding would contradict rules or guidance provided by the TEC to herself or others similarly situated so as to undermine the Commission's authority to regulate election-related activity.

While this Court has generally limited the pretrial writ to facial constitutional attacks, "certain types of as-applied claims may be raised by pretrial habeas because the particular constitutional right at issue in the as-applied challenge is the type that would be effectively undermined if not vindicated prior to trial." *Ex parte Perry*, 483 S.W.3d 884, 896 (Tex. Crim. App. 2016) (plurality op.). When a prosecution, by its very existence and nature, would have the effect of interfering with duties assigned

to another department of government, pretrial review is essential to avoid or at least mitigate the effect of the judiciary over-stepping its bounds and impeding the exercise of discretion assigned elsewhere. *Id.* That concern was detailed comprehensively in the U.S. Supreme Court's recent decision in *Trump v. United States* where the Court stressed the need to entertain and resolve such claims before trial. 603 U.S. 593, 635 (2024).

That problem is, if anything, more acute under our Texas Constitution, as the office of the prosecutor is located in the judicial department alongside the courts who preside over any cases they might bring. TEX. CONST. art. V, § 21. While these considerations will arise most obviously in cases brought directly against the Chief Executive, as in the *Perry* and *Trump* cases, the "law does not discriminate between the president and a private citizen." *Trump*, 603 U.S. at 612 (quoting *United States v. Burr*, 25 F. Cas. 30, 34 (No. 14,692d) (CC Va. 1807)). The constitutional question instead turns upon whether the process of trying of the case would conflict with "administration of public affairs as entrusted to" other branches of government. *Id.* at 618 (internal quotations omitted).

Where the applicant presents a non-frivolous[4] assertion that the prosecution would result in the judicial branch interjecting itself and interfering with the exercise of a power assigned by the Constitution and laws to another branch or department of government, a pretrial writ is a proper vehicle to review the claim. *Id.* The case before us requires consideration of precisely these questions and is thus cognizable.

We now turn to the question of whether Appellant has shown that the prosecution would operate to interfere with the operations and authority of the TEC.

## II. APPELLANT HAS NOT SHOWN THAT THIS OR ANY PROSECUTION OF ELECTION LAW MATTERS WOULD INTERFERE WITH CIVIL INVESTIGATIONS BY THE TEXAS ETHICS COMMISSION

While Appellant's claim presents serious jurisdiction and constitutional questions, it just as surely faces serious constitutional flaws. To begin, we assume the Legislature intended for its laws to be enforced. We also presume that the Legislature is aware of the constitutional design, by which district and county attorneys are empowered to pursue criminal enforcement and is no more eager than the judiciary to impede on (or foreclose) enforcement authority assigned to another branch or department of government.

---

[4] Because the writ is by nature extraordinary, an application that is frivolous and wholly insubstantial would not be justiciable. While Appellant's contentions are not frivolous so as to foreclose cognizability by means of pretrial writ, they do confront challenges on the merits, as detailed below.

As further detailed below, where, as here, the Legislature has, itself, authorized both criminal and civil enforcement of its law, we assume it means to authorize both to proceed absent very clear indications in the text of the statute or the Constitution. *See Bond v. United States,* 572 U.S. 844, 858 (2014); TEX. PENAL CODE ANN. § 1.02. We reject the categorical claim that *no* prosecution can be brought to enforce criminal laws concerning the conduct of elections simply because their subject matter may overlap with civil jurisdiction conferred on the TEC. Neither do we find any basis in this record to conclude that permitting this prosecution would interfere with any authority assigned to the TEC.

### A. The TEC's Constitutional Enforcement Power Is Clear But Not Clearly Exclusive

The TEC is a unique agency. While many of its functions would typically be considered executive by nature, it was created directly by constitutional amendment and placed within the legislative department. TEX. CONST. art. III, §24a; *see also* TEX. GOV'T CODE ANN. Ch. 571. The Commission is tasked with assuring public confidence in the conduct of elections, including the campaigning and financial behavior of candidates and office holders. Meanwhile, county and district attorneys (and district courts) are authorized by Article V of the Texas Constitution and a variety of statutes to pursue and preside over all manner of criminal cases, including but not limited to, various election law matters.

We generally assume the branches of government operate separately within their respective spheres of magistry because our Constitution and the U.S. Constitution both demand this. *See* TEX. CONST. art. IV; U.S. CONST. art. IV, §4. This design obviously precludes the exercise of authority by one branch or department of government when that authority is explicitly assigned elsewhere by the Constitution. But, when the Constitution does not distribute power exclusively to one branch of government, the question is more difficult and devolves into one of legislative assignment or assent. *See Youngstown Sheet and Tube v. Sawyer*, 343 U.S. 579, 637 (1952) (Jackson, J., concurring).

The Texas Constitution creates both the TEC and the offices of the county and district attorneys. Nothing in either provision remotely suggests exclusivity at the expense of the other. And, while it is surely within its power to do so, the Legislature has not taken any action to so limit the role of prosecutors in election law cases. This is telling and unhelpful (if not fatal) to appellant's argument. *Id.*

### B. The Statutory Delegations to TEC Are Consistent With Parallel Criminal Enforcement

Chapter 571 of the Government Code expressly grants the TEC authority to "administer and enforce" its provisions. Appellant argues that the TEC, as part of the legislative branch, must *fully investigate and resolve all potential penalties* before a prosecution might introduce its subject matter to the judiciary for criminal

prosecution.[5]  Yet the statutes under which Appellant was prosecuted say otherwise in that they authorize criminal prosecution with respect to the same activities subject to TEC civil enforcement.

"In construing a statute, we give effect to the plain meaning of its language unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not have possibly intended."  *Perry*, 483 S.W.3d at 902.  We also presume "the statute complies with the Texas and federal constitutions; the entire statute is intended to be effective; a just and reasonable result is intended; a result feasible of execution is intended; and public interest is favored over private interest."  *Dunham v. State*, 666 S.W.3d 477, 484 (Tex. Crim. App. 2023).  We also do not generally assume that legislation is accurately interpreted as depriving prosecutors of their constitutional authority given the compelling governmental interest in effective law enforcement.  *Trump v. Vance,* 591 U.S. 786, 808 (2020); TEX. PENAL CODE §1.02.  We instead presume each is free to act barring clear textual evidence of contrary intention and are obliged to prefer any reasonable construction

---

[5] The relevant statutes include: Government Code Chapters 302, 303, 305, 572, and 2004; Subchapter C, Chapter 159, Local Government Code, in connection with a county judicial officer, as defined by Section 159.051, Local Government Code, who elects to file a financial statement with the commission; Title 15, Election Code [Election Code Section 251.001 et seq.; and Government Code Sections 2152.064 and 2155.003. *See Ex parte Charette*, No. PD-0522-21, 2024 WL 4138710, at *4 (Tex. Crim. App. Sept. 11, 2024), *reh'g granted* (Jan. 15, 2025).

of the statute that would avoid the ultimate constitutional question. *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

As Appellant notes, the plain text of Government Code Section 571.172 states the Ethics Commission holds the authority to "issue and enforce a cease and desist order to stop a violation" and to issue an "affirmative order to require compliance with the laws administered and enforced by the commission." TEX. GOV'T CODE ANN. § 571.172. The preceding section, Section 571.171, authorizes the Commission to "*initiate civil* enforcement actions and *refer* matters to the appropriate prosecuting attorney for criminal prosecution." It also permits the TEC's executive director, upon receiving a sworn complaint and reasonably believing that the subject has violated Chapter 36 or 39 of the Penal Code, to refer the matter for criminal prosecution regardless of any pending civil investigation. *Id.* § 571.171.

None of these delegations of duties is ambiguous. The plain text is clear: in matters of election law, the commission is empowered to conduct investigations into allegations of code violations, "initiate *civil* enforcement actions," and refer possible violations of criminal law to district and county attorneys. The statute describes one matter as civil, the other matter as criminal. The text does not purport to authorize the TEC to initiate a criminal prosecution, compel such an initiation or forbid either

the initiation or continuation of criminal prosecutions unless or until a civil proceeding has first terminated.

To that extent, construing Government Code Sections 571.171 and 571.172 to categorically bar prosecutions by a district attorney unless and until civil investigations and penalties have ceased or until TEC has expressly authorized criminal prosecution reads language into the text, impinges upon the constitutional framework of this state and could lead to absurd results not supported by legislative text. One case can proceed parallel to another, as criminal and civil cases often do in, among other settings, manslaughter and wrongful death suits and child abuse and parental terminations proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.006; TEX. FAM. CODE ANN. § 161.001.

In fact, a directly analogous situation exists in Texas with the handling of driving while intoxicated (DWI) cases. Both criminal investigations and prosecutions for the DWI charge and proceedings under the Administrative License Revocation (ALR) Program—a civil process administered by the Texas Department of Public Safety, a state agency within the executive branch[6]—may and often do proceed in parallel.

---

[6] TEX. TRANSP. CODE ANN. Ch. 524.

### C. The TEC's Power to Refer Is Neither Unique Nor Controlling

Appellant stresses that Government Code § 571.171 confers authority upon the TEC to refer matters to the appropriate prosecuting agency in the case of Penal Code violations. While the plain text of the provision at issue here *authorizes* but does not compel referral, this is also hardly sufficient to *bar* enforcement of the state's criminal laws in the absence of the exercise of that discretion. *Cf.* TEX. GOV'T CODE ANN. § 4007.001 (authorizing Texas Securities Commissioner to consider "the number and types of board employees, that would be needed to assist in the prosecution of the case" prior to referral).[7]

Standing alone, the authorization to refer a matter for prosecution is scant evidence that such a referral is a necessary pre-condition to a prosecution. Given the constitutional separation of powers implications, we are reluctant to—indeed

---

[7] Similarly, the Legislature has within the confines of our statutes created guidelines for the operation of occupations, programs and services not governed by the criminal codes, but which may in the course of business come into contact with matters of criminal law. In these sections, the legislature has allocated similar referral ability, opportunity, responsibility to teachers and other professionals with knowledge of potential child abuse or neglect, 9-1-1 operators, and even every person in Texas who observes a felony involving serious bodily injury. The U.S. Congress has done the same with respect to virtually every person in the United States. *See* TEX. FAMILY CODE ANN. § 261.101; TEX. HEALTH & SAFETY CODE ANN. § 772.112; TEX. PENAL CODE ANN. § 38.171; and 18 U.S.C. § 4. While application of this section has been cabined by judicial interpretation to persons with some other duty it provides: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in . . . authority . . . shall be fined under this title or imprisoned." None of these authorizations or directives has ever been construed as a pre-condition to the initiation of a criminal proceeding separately authorized by the Penal Code.

duty-bound *not* to—embrace a reading of the statute that would strip the state's county and district attorneys of their constitutional authority to bring an otherwise viable criminal charge where a plain, constitutional reading of the text is available. Ron Beal, *The Art of Statutory Construction: Texas Style,* 64 BAYLOR L. REV. 339, 428 (2012). We likewise assume our Legislature, no less than us, is aware of and intends to legislate within the confines of our Constitution. *See Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) ("[Constitutional avoidance] canon "not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that Congress, like this Court, is bound by and swears by an oath to uphold the Constitution.").

By way of contrast, the Legislature has explicitly provided for the type of abatement or primary jurisdiction urged here in other circumstances involving potential overlap between criminal and civil proceedings.[8] When the Legislature intends to restrict parallel administrative and judicial enforcement of its laws, it

---

[8] For example, the Texas Family Code's Title 3, also known as the Juvenile Justice Code, prescribes the process of investigation, referral to a first offender program, and punishment of minors involved in criminal activity. This specific restraint on initiation of a criminal prosecution fits the legislative design of rehabilitating, rather than punishing, the minor in question. *See* TEX. FAM. CODE ANN. §§ 51.201–61.107; *see also* TEX. ATT'Y GEN. OFFICE, 2020 JUVENILE JUSTICE HANDBOOK (2020). Though the cases addressed by the Juvenile Justice Code are criminal in nature, the legislative text confirms, unlike the statute at issue here, no criminal case should proceed unless and until its purposes are satisfied.

knows how to do so. *See* TEX. LAB. CODE ANN. §§ 21.201–21.211 (addressing protocol for filing and exhaustion of administrative proceedings involved in employment discrimination cases). No such language appears in the statutory text here and reading it into the statute would create an otherwise avoidable constitutional conflict.

For all of these reasons, we decline Appellant's invitation to read the referral provision as a necessary precondition to criminal enforcement.

## III.  MOTION TO DISMISS

The State brings to our attention recent legislation concerning the right of prosecutors to proceed in the absence of any referral from the TEC, urging that it applies retroactively so as to moot this controversy. [9] Appellant responds, urging that although the plain text of Texas Government Code § 23.002 authorizes the law to apply retroactively, we ought to disregard such application as it presents constitutional questions concerning its retroactive application. While we are grateful to the State and to Appellant for bringing this development to our attention, we see no need to opine on the constitutional questions Appellant raises in view of our disposition above. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003); *accord*

---

[9] "Unless expressly provided otherwise, the exhaustion of civil, including administrative, remedies is not a prerequisite to the vesting in a trial court of subject matter jurisdiction over a criminal action for which the trial court would otherwise have jurisdiction under other law." TEX. GOV'T CODE ANN. § 23.002.

*Ashwander v. Tenn. Valley Auth.,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("If a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter.").

## CONCLUSION

While we find Appellant's application for a pretrial writ of habeas corpus to be cognizable, she has failed to demonstrate her entitlement to relief. For these reasons, the Court withdraws its prior opinion reversing the court of appeals and instead affirms its judgment.


Delivered: August 20, 2025

Publish